# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 05 C 5442 |
|  | ) Judge Nordberg |
|  | ) Magistrate Denlow |
| Centurion Financial Benefits LLC, *et al.*, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION FOR ENTRY OF JUDGMENT AGAINST DEFENDANTS ROBERT HOUTTUIN AND ALL CORPORATE DEFENDANTS

Plaintiff, the Federal Trade Commission, pursuant to Rule 54 of the Federal Rules of

Civil Procedure, requests that the Court enter judgment on its behalf against individual defendant

Robert Houttuin and all corporate defendants, including: Centurion Financial Benefits LLC., a

Delaware limited liability corporation; 1629936 Ontario Ltd., d/b/a Centurion Financial Benefits;

1644738 Ontario Ltd., d/b/a Integra Financial Benefits; 1466826 Ontario Ltd., d/b/a ESI

Employment Solutions Inc.; 1571816 Ontario Ltd., d/b/a RNR Holdings and Vu Com

Communications; 1636286 Ontario Ltd., d/b/a Spectra Financial Benefits; 1648534 Ontario Ltd.,

d/b/a Sureway Financial Benefits; 1652242 Ontario Ltd., d/b/a Oxford Financial Alliance and

Oxford Financial Benefits; 1656324 Ontario Ltd., d/b/a Simple Choice Financial Benefits;

6347738 Canada Inc., d/b/a ESI Contact Inc.; American Getaway Vacations Inc., d/b/a Integra

Financial Benefits; Credence Travel Processing Inc., d/b/a Integra Financial Benefits; and

Topstar Media Inc., d/b/a Integra Financial Benefits. In support of its motion, the FTC states as

follows:

**Procedural History**

1.    From approximately July 2004 through September 2005, Robert Houttuin and his accomplices sold millions of dollars of non-existent unsecured credit cards to U.S. consumers for an advance fee of several hundred dollars.  Houttuin operated his scam from two telemarketing boiler rooms in Toronto.  He also worked in conjunction with a third boiler room located in Calgary run by defendant Tony Andreopoulos.  None of the thousands of consumers who paid the defendants' $249 advance fee received a credit card.

2.    The FTC filed its original complaint in this matter on September 21, 2005, charging four individuals and six corporate entities with violating the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and several provisions of the Telemarketing Sales Rule, 16 C.F.R. Part 310.  On the day the original complaint was filed, the Court entered an *ex parte* Temporary Restraining Order against all the named defendants, enjoining their illicit conduct and freezing their assets.

3.    On December 15, 2005, the FTC filed a motion to amend its complaint to add seven additional corporate defendants and four additional individual defendants, including Houttuin.  The Court granted the FTC's motion to amend on December 15, 2005, and the FTC subsequently filed its First Amended Complaint.

4.    Count I of the FTC's First Amended Complaint charges the defendants with engaging in deceptive trade practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by falsely representing that in exchange for an advance fee consumers are guaranteed or are highly likely to receive an unsecured credit card.  Counts II and III allege that this conduct also violates Sections 310.3(a)(2)(iii) and 310.4(a)(4) of the Telemarketing Sales Rule, 16 C.F.R.

§§ 310.3(a)(2)(iii) and 310.4(a)(4). Finally, Counts IV and V of the FTC's First Amended Complaint allege that the defendants initiated outbound telephone calls to persons on the National Do Not Call Registry as well as failed to pay the required annual fees associated with the registry in violation of the Telemarketing Sales Rule, 16 C.F.R. §§ 310.4(b)(1)(iii)(B) and 310.8.

5.    In an order entered February 17, 2006, the Court granted the FTC's Motion for Default Judgment as to All Corporate Defendants. In an order entered December 13, 2006, the Court granted the FTC's Motion for Partial Judgment on the Pleadings as to Defendants Houttuin and Bellissimo, finding them liable for Counts I, II, and III of the FTC's First Amended Complaint.

6.    In the above-referenced motions, the FTC indicated that it would seek final judgments at a later date after determining the appropriate amount of consumer redress that the defendants should be ordered to pay. Accordingly, the Court has not yet entered a final judgment against Houttuin, Bellissimo, or the corporate defendants.[1]

## Consumer Injury

7.    Total consumer injury caused by the defendants' deceptive practices is $9,894,514. As explained below, this calculation is based on payment processing records produced to the FTC by the financial institutions that debited consumers' bank accounts on behalf of the defendants.

8.    The defendants obtained funds from consumers through the use of two third-party

---

[1]    The FTC will move for entry of a final judgment as to Bellissimo after the Commission's pending motion for contempt (Dkt. #75) against Bellissimo has been resolved.

payment processors, Global Marketing Group, Inc. ("Global") and Payment Resources

International ("PRI").[2] Global and PRI debited funds from consumers' bank accounts using

either the Automated Clearing House Network ("ACH Network") or so-called "demand draft"

checks.[3] All transactions were routed through two banks affiliated with the processors: Pilot

Bank of Tampa, Florida ("Pilot") and Calnet Business Bank of Sacramento, California

("Calnet"). Transaction data maintained by Pilot and Calnet show that the defendants sold a net

total of $9,894,514 of their non-existent credit cards during the one-year lifetime of the scam.[4]

### Form of Proposed Final Judgment[5]

9.      The scope of the proposed Final Judgment is appropriate in light of the

defendants' unlawful conduct and the likelihood that such conduct would recur in the absence of

the proposed injunctive relief. The injunctive provisions set forth in Section I of the proposed

Final Judgment prohibit the specific deceptive practices alleged in the Commission's complaint,

---

[2]      *See* Declaration of Alan E. Krause in Support of Plaintiff Federal Trade
Commission's Motion for Temporary Restraining Order ("Krause TRO Declaration") at ¶¶ 15-
18. For the Court's convenience, a true and correct copy of the Krause TRO Declaration is
attached to this motion as Exhibit 1.

[3]      *See id.* The ACH Network is a nationwide funds transfer system that provides for
the inter-bank clearing of electronic payments. A demand draft is a document that looks exactly
like a check in a consumer's checkbook – imprinted with the consumer's name, address,
telephone number, account number, and bank routing number. The only difference is that in
place of the signature, there is a notation such as "signature on file" or "pre-approved."

[4]      *See* Supplemental Declaration of Alan E. Krause at ¶¶ 4-6, attached to this motion
as Exhibit 2.

[5]      Attached to this motion as Exhibit 3 is a proposed final judgement for Robert
Houttuin. Attached as Exhibit 4 is a proposed final judgement for the corporate defendants. The
Houttuin proposed judgment does not address his liability for Counts IV and V of the First
Amended Complaint; Plaintiff expects to voluntarily dismiss these counts as to Houttuin at a
later date.

as well as similar deceptive practices.  These additional injunctive provisions are similar to those currently found in Preliminary Injunctions entered by this Court on October 14, 2005, November 18, 2005, and January 23, 2006.

10.     The permanent injunctive relief the Commission seeks bears a reasonable relationship to the defendants' unlawful practices, yet the prohibitions are framed broadly enough to prevent the defendants from engaging in similarly illegal practices in the future. *See FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 395, 85 S. Ct. 1035, 1048 (1965) ("'The Commission is not limited to prohibiting the illegal practice in the precise form in which it has been found to have existed in the past.'  Having been caught violating the [FTC] Act, respondents 'must expect some fencing in.'" (quoting *FTC v. Ruberoid Co.,* 343 U.S. 470, 473 (1952), and *FTC v. National Lead Co.,* 352 U.S. 419, 431 (1957)).[6]

11.     Section II of the proposed Final Judgment would impose equitable monetary relief against Houttuin and all corporate defendants, jointly and severally, in the amount of $9,894,514.  The proper measure of equitable monetary relief under the FTC Act is the total amount paid by victims of an illegal scheme less any amounts previously returned to the victims by defendants. *See FTC v. Febre,* 128 F.3d 530, 536 (7th. Cir. 1997); *FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 1013, 1019 (N.D. Ind. 2000), *aff'd,* 312 F.3d 259 (7th. Cir. 2002).  As detailed above and in the Krause Supplemental Declaration, the FTC's calculation of consumer injury is well

---

[6]     The proposed Final Judgment also includes standard provisions designed to ensure compliance and enforceability, including provisions requiring the maintenance of records, allowing the Commission to monitor defendants' compliance, and requiring defendants to submit compliance reports to the Commission.  Such provisions are proper to ensure compliance with the injunctive provisions discussed above. *See, e.g., FTC v. US Sales Corp.,* 785 F. Supp. 737, 753-54 (N.D. Ill. 1992).

supported by the record evidence.

WHEREFORE, plaintiff Federal Trade Commission respectfully requests that the Court enter a final judgment against defendants Robert Houttuin and all corporate defendants that includes a permanent injunction and equitable monetary relief of $9,894,514. A proposed Final Judgment and Order for Permanent Injunction is provided with this Motion.

Respectfully Submitted,

WILLIAM BLUMENTHAL
General Counsel

DATED: April 19, 2007

/s James H. Davis
JAMES H. DAVIS
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
Voice: (312) 960-5634
Fax:    (312) 960-5600
email: jdavis@ftc.gov

# Exhibit 1

# DECLARATION OF ALAN E. KRAUSE
## PURSUANT TO 28 U.S.C. § 1746

I, Alan E. Krause, hereby declare as follows:

1.   I am an investigator with the Midwest Region of the Federal Trade Commission ("FTC"),
a position I have held for approximately thirty-one years.  My business address is 55 East
Monroe Street, Suite 1860, Chicago, Illinois 60603.  I have personal knowledge of the
facts set forth herein and, if called as a witness, I could and would competently testify to
the facts stated herein.

2.   As an FTC investigator, my duties include collecting information regarding parties who
are suspected of engaging in unfair or deceptive acts or practices in violation of the FTC
Act.

3.   In the course of my employment, I was assigned to participate in an investigation of
individuals and entities engaged in the telemarketing of advance fee credit cards under
various names, including Centurion Financial Benefits, Integra Financial Benefits,
Spectra Financial Benefits, Sureway Beneficial, Simple Choice Benefits, Oxford
Financial Benefits, and Prosperica Financial Benefits, which I refer to throughout this
declaration as "the Centurion investigation."

4.   A number of documents are attached to this declaration.  I have redacted certain terms

1

and phrases from certain documents in order to preserve sensitive information, such as consumers' financial account numbers.

## Company Information

5.   In the course of the Centurion investigation, the FTC received a certified copy of the corporate filings for Centurion Financial Benefits LLC from the Delaware Secretary of State. Attached hereto as **Krause Att. A** is a true and correct copy of these documents.

6.   In the course of the Centurion investigation, the FTC received the following documents from the Ontario Ministry of Consumer and Business Services:

   a.   certified microfiche of the corporate filings for 1629936 Ontario Ltd. Attached hereto as **Krause Att. B** is a true and correct copy of a printout of this microfiche; and

   b.   certified microfiche of the corporate filings for 1644738 Ontario Ltd. Attached hereto as **Krause Att. C** is a true and correct copy of a printout of this microfiche.

7.   The registered address for the corporate entities referred to above in Paragraphs 5 and 6 is 925 Yonge Street, Toronto, Ontario M4W 2H2. This location is what is known in the United States as a commercial mail receiving agency, Direct Mail Boxes. As indicated by the company's Internet website, services provided by Direct Mail Boxes include mail box rental as well as mail forwarding and holding. A true and correct copy of a printout of

portions of the Direct Mail Boxes website (www.directmailboxes.com) is attached hereto as **Krause Att. D.**

8.      In the course of the Centurion investigation, the FTC received the following documents from the Alberta Ministry of Consumer Services:

         a.      certified copies of the corporate filings for American Getaway Vacations Inc. Attached hereto as **Krause Att. E** is a true and correct copy of these documents; and

         b.      certified copies of the corporate filings for Topstar Media Inc. Attached hereto as **Krause Att. F** is a true and correct copy of these documents.

9.      In the course of the Centurion investigation, the FTC received a certified copy of the corporate filings for Credence Travel Processing Inc. from the British Columbia Business Practices and Consumer Protection Authority. Attached hereto as **Krause Att. G** is a true and correct copy of these documents.

10.      In the course of the Centurion investigation, FTC personnel searched an Internet website called Ripoff Report (www.ripofferport.com) for complaints and other information related to the d/b/as noted above in Paragraph 3. In a message posted August 12, 2005, a Canadian individual describes his experience working at a telemarketing boiler room in Calgary selling bogus MasterCard credit cards to U.S. consumers for $249 under the name "Oxford Financial Benefits." The customer service telephone number given out to

consumers, 866-333-7715, is the same number associated with the vast majority of complaints against Oxford noted below in Paragraph 24. A true and correct printout of this message is attached hereto as **Krause Att. H**.

### Postal Service Forms

11. In the course of the Centurion investigation, the FTC received the following documents related to mail drops and post office boxes opened by Sean Somma in Champlain, New York:

   a. Postal Service Form 1583 ("Application for Delivery of Mail Through Agent") submitted by Sean Somma on behalf of "Spectra Financial Benefits" dated October 22, 2004. Attached hereto as **Krause Att. I** is a true and correct copy of this document;

   b. Postal Service Form 1583 ("Application for Delivery of Mail Through Agent") submitted by Sean Somma dated December 20, 2004, authorizing mail to be received at 100A Walnut, Champlain, New York #249 on behalf of "Spectra Financial Benefits." Attached hereto as **Krause Att. J** is a true and correct copy of this document; and

   c. Photocopies of Sean Somma's Canadian passport and social insurance number card. Attached hereto as **Krause Att. K** is a true and correct copy of these documents.

12. In the course of the Centurion investigation, the FTC received the following documents

related to mail drops and post office boxes opened by Antonio Marchese in Champlain, New York:

a.    Postal Service Form 1093 ("Application for Post Office Box or Caller Service") submitted by Antonio Marchese on behalf of "Sureway Beneficial" on February 22, 2005, for Post Office Box 3548 in Champlain, New York. Attached hereto as **Krause Att. L** is a true and correct copy of this document;

b.    Postal Service Form 1093 ("Application for Post Office Box or Caller Service") submitted by Antonio Marchese on behalf of "Oxford Financial Alliance" on April 13, 2005, for Post Office Box 3588 in Champlain, New York. Attached hereto as **Krause Att. M** is a true and correct copy of this document;

c.    Postal Service Form 1583 ("Application for Delivery of Mail Through Agent") submitted by Tony Marchese on behalf of "EOL Literacy Group" dated March 29, 2005. Attached hereto as **Krause Att. N** is a true and correct copy of this document;

d.    Postal Service Form 1093 ("Application for Post Office Box or Caller Service") submitted by Tony Marchese on behalf of "Centurian Financial" [sic] and "EOL Literacy Group" dated April 7, 2005, for Post Office Box 3348 in Champlain, New York. Attached hereto as **Krause Att. O** is a true and correct copy of this document;

e.    A facsimile transmittal sheet from "Tony Marchese" to "Patrick B." dated

5

January 12, 2005, on Integra Financial Benefits letterhead; and Postal Service Form 1583 ("Application for Delivery of Mail Through Agent") submitted by Antonio Marchese dated January 12, 2005, authorizing mail to be received at 100-A Walnut, Champlain, New York #197 on behalf of "Integra Financial Benefits." Attached hereto as **Krause Att. P** is a true and correct copy of these documents;

f.     Photocopies of Antonio Marchese's Ontario driver's license and Canada social insurance number card. Attached hereto as **Krause Att. Q** is a true and correct copy of these documents; and

g.     Postal Service Form 1583 ("Application for Delivery of Mail Through Agent") submitted by Tony Marchese on behalf of "Prosperica Financial Benefits" dated April 16, 2005. Attached hereto as **Krause Att. R** is a true and correct copy of this document.

## Narland Management

13.     In the course of the Centurion investigation, the FTC received documents relating to the lease of 1935 32nd Avenue NE, Suite 140, Calgary, Alberta by American Getaway Vacations and Tony Andreopoulos. The FTC obtained these documents from Narland Management, the company that leased this property to Andreopoulos. Documents obtained from Narland include: a signed lease dated September 29, 2004; correspondence relating to the negotiation and termination of the lease, including copies of business cards provided to Narland by Andreopoulos; and copies of rent checks

6

provided to Narland. Attached hereto as **Krause Att. S** is a true and correct copy of these documents.

14.    In the course of the Centurion investigation, the FTC also obtained from Canadian law enforcement a copy of an unclaimed telephone bill addressed to Credence Travel Processing at 1935 32nd Avenue NE, Suite 140, Calgary, Alberta. This 42-page bill, dated April 28, 2005, shows that Credence owed $46,296.45 for charges related to 38 different telephone numbers registered to the company. One of these telephone numbers, (403) 219-3008, has appeared on the caller ID of at least two consumer victims. *See* Foreman Dec. ¶ 3 (PX 19) and Taylor Dec. ¶ 3 (PX 16). A true and correct copy of the first four pages of the April 2005 bill is attached hereto as **Krause Att. T.**

## Payment Resources International

15.    In the course of the Centurion investigation, the FTC obtained documents from Payment Resources International ("PRI"), a payment processor hired by defendants to debit funds from consumers' bank accounts. Among other things, the FTC obtained two "Data Processing and Payment Collection Applications" submitted by defendants. The first application was submitted by Sean Somma dated September 14, 2005, on behalf of 1629936 Ontario Ltd. d/b/a Centurion Financial Benefits. The second application was submitted by Tony Marchese dated January 19, 2005, on behalf of 1644738 Ontario Ltd. d/b/a Integra Financial Benefits. Each application is accompanied by corporate documents regarding the applicant as well as a telemarketing script. Attached hereto as

**Krause Atts. U** and **V** are true and correct copies of the applications and related attachments. In addition to these applications, the FTC also obtained an eight page chart from PRI entitled:

> Payment Resources International
> ACH and Draft Merchant Processing Totals
> January 2003 to February MTD 2005

Attached hereto as **Krause Att. W** is a true and correct copy of this chart. The chart indicates that PRI processed a total of $5,163,303 in transactions on behalf of Centurion, Integra, and at least one other d/b/a associated with the Centurion investigation, Spectra Financial Benefits. Transaction volume for these three d/b/as is as follows:

| d/b/a | Total Sales Amount | Time Period |
|---|---|---|
| Centurion | $3,868,476 | 09/04 - 02/05 |
| Spectra | $1,050,780 | 01/05 - 02/05 |
| Integra | $424,047 | 01/05 - 02/05 |

16. In the course of the Centurion investigation, the FTC obtained declarations from numerous consumers victimized by this scam. The following consumers provided copies of canceled demand draft checks used by the scam's perpetrators to withdraw funds from consumers' accounts: Mary Blume (Centurion), James Harris (Spectra), Mary McCool (Integra), and Edna Newell (Integra). The d/b/a associated with each declaration is indicated parenthetically next to the consumer's name. There is a nine digit number -- 121143257-- and the words "CALNET BUSINESS BANK SACRAMENTO, CA" printed on the back of each of these checks. On its website (www.fedwiredirectory.frb.org), the Federal Reserve maintains a directory of financial

8

institutions searchable by the institution's routing number. According to this directory, 121143257 is the routing number assigned to Calnet Business Bank in Sacramento, California. A true and correct printout of the page from the Federal Reserve website showing the results of a search that the FTC conducted using the number 121143257 is attached hereto as **Krause Att. X**.

17.    In the course of the Centurion investigation, the FTC obtained documents from Calnet Business Bank indicating that the bank handles transactions for various PRI clients, including d/b/as associated with the Centurion investigation. For example, the FTC obtained two letters from a senior vice president of Calnet addressed to consumers whose accounts were debited by Integra Financial Benefits and Spectra Financial Benefits. The letters state that Integra and Spectra are "a customer of the Bank." True and correct copies of these letters are attached hereto as **Krause Att. Y**.

18.    In addition to PRI, the FTC has learned through conversations with consumers that the defendants have processed transactions related to the Centurion scam through Global Business Solutions, a payment processor based in Tampa, Florida. This is consistent with statements in the applications submitted to PRI by Somma and Marchese (See Paragraph 15, above) identifying "Global" and "Global Processing" as the companies' "current" processor.

19.    As evidenced by the declaration of Tracy Murphy (PX 25 Att. C), defendants use or have

used a third processor, ACH Commerce, to handle sales related to the Oxford Financial
Benefits d/b/a.

## AOL Civil Investigative Demand

20. On or about July 27, 2005, FTC personnel printed two help wanted advertisements posted
    on different Internet websites seeking "call center managers" to work for a Calgary-based
    company named American Getaway Vacations. Both advertisements provide the same
    email contact address, agvacations@aol.com. True and correct copies of these
    documents are attached hereto as **Krause Att. Z.**

21. On or about August 5, 2005, the FTC sent a civil investigative demand ("CID"), pursuant
    to Section 20 of the FTC Act, 15 U.S.C. § 57b-1, to America Online, Inc. The CID
    requested, among other things, account information regarding the AOL screen name
    "agvacations."

22. On or about September 13, 2005, the FTC received responsive documents from America
    Online, including a document indicating that the screen name "agvacations" is registered
    to Tony Andreopoulos, 114 Waterstone Crescent, Airdrie, Alberta. Other screen names
    registered to Andreopoulos include "topstarmedia" and "telesalesreps." A true and
    correct copy the relevant document produced by American Online is attached hereto as
    **Krause Att. AA.**

## TMC Services

23.  In the course of the Centurion investigation, the FTC received a copy of an invoice from the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). ICE obtained this invoice on or around the beginning of September 2005 from TMC Services, a Canadian company known to be involved in order fulfillment for the perpetrators of the Centurion scam. The invoice indicates that Antonio Marchese had hired TMC Services to transport a total of 704 packages containing "Integra" and "Oxford" "info kits" with a declared value of $15.50 per package. A true and correct copy of the invoice is attached hereto as **Krause Att. BB**.

## Consumer Complaints

24.  The FTC and other law enforcement agencies have access to the "Consumer Sentinel" database of consumer complaints. On or about August 31, 2005, FTC personnel searched this database for complaints against "Centurion Financial," "Integra Financial," "Spectra Financial," "Sureway," "Simple Choice," "Oxford Financial," or "Prosperica Financial." These searches are not case sensitive. Based on my review of these search results, I found over 750 total complaints attributable to the various d/b/as associated with the Centurion investigation. In these complaints, consumers generally complain that they received a telephone call from a telemarketer selling a credit card for an advance fee, that they purchased the credit card for the specified fee, had their bank account debited to pay the fee, and never received the credit card. The newest d/b/a used by the perpetrators of this scam, Prosperica, has so far only generated a few complaints.

11

## National Do Not Call Registry

25.   In the course of the Centurion investigation, FTC personnel used a personal computer in the FTC office in Chicago to access the National Do Not Call Registry ("Registry") database to determine whether certain entities had accessed the Registry. FTC personnel have access to the DNC Registry and are able to search for information on "Organizations Accessing the Registry" by typing information into various search fields, including organization name, address, and authorized representative last name. Using these three entry fields, on or about August 30, 2005, FTC personnel ran Registry searches under the names and addresses revealed by the Centurion investigation to be associated with consumer fraud complaints referenced above in Paragraph 24. The search terms included:

  a.   "Auth. Rep. Last Name" of "Somma," "Marchese," and "Andreopoulos";

  b.   a registration "Address" that included "%Yonge%," "%Waterstone%," "%Wolfrey%," or "%Grapevine%" (where % is a wildcard search character) as part of the street address, and "Champlain" and "Calgary" for the city;

  c.   "Organization Name" that included "Centurion Financial," "Integra Financial," "Spectra Financial," "Sureway," "Simple Choice," and "Oxford Financial," as part of the organization's name.

26.   After reviewing the foregoing search results for company names, "doing business as" names, individual's names, and addresses revealed by the Centurion investigation to be

related to the consumer complaints referenced above in Paragraph 24, FTC personnel determined that, of the search results returned, none appeared to be related to the Centurion investigation. Attached hereto as **Krause Att. CC** is a true and correct copy of the Registry search results for the foregoing searches.

27.    Various law enforcement agencies have access to the DNC Registry and are able to search for complaints by company name and/or by company telephone number. On or about August 30, 2005, FTC personnel accessed the National Registry and searched for the number of complaints of Do Not Call violations in which the consumer identified "Centurion Financial," "Integra Financial," "Spectra Financial," "Sureway," "Simple Choice," and "Oxford Financial" as comprising part of the name of the company identified in the call. These searches are not case sensitive.

28.    I have personally received and reviewed the search results from the searches set forth in Paragraph 27 and have omitted duplicate entries based on the complaint Reference Number. Based on my review of these search results, I found 25 Do Not Call complaints associated with the d/b/as associated with the Centurion investigation.

29.    In the course of the Centurion investigation, the FTC received a copy of Postal Service Form 1583 ("Application for Delivery of Mail Through Agent") submitted by Sean Somma on behalf of "Centurian Financial Benefits" dated September 2, 2004, photocopies of Sean Somma's Canadian Social Insurance Number card and Canadian

passport. Attached hereto as **Krause Att. DD** is a true and correct copy of these documents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September ___19___, 2005.

*Alan E. Krause*
Alan E. Krause

# Exhibit 2

# SUPPLEMENTAL DECLARATION OF ALAN E. KRAUSE
## PURSUANT TO 28 U.S.C. § 1746

I, Alan E. Krause, hereby declare as follows:

1.     I am an investigator with the Midwest Region of the Federal Trade Commission ("FTC"),
a position I have held for approximately thirty-three years. My business address is 55
West Monroe Street, Suite 1825, Chicago, Illinois 60603. I have personal knowledge of
the facts set forth herein and, if called as a witness, I could and would competently testify
to the facts stated herein.

2.     As an FTC investigator, my duties include collecting information regarding parties who
are suspected of engaging in unfair or deceptive acts or practices in violation of the FTC
Act.

3.     I am the same Alan E. Krause who previously filed a declaration in this matter in
September 2005 in support of the FTC's *Ex Parte* Motion for Temporary Restraining
Order. In the course of my employment, I was assigned to participate in an investigation
of individuals and entities engaged in the telemarketing of advance fee credit cards under
various names, including Centurion Financial Benefits, Integra Financial Benefits,
Spectra Financial Benefits, Sureway Beneficial, Simple Choice Benefits, Oxford
Financial Benefits, and Prosperica Financial Benefits, which I refer to throughout this
declaration as "the Centurion investigation." In the course of the Centurion investigation,

1

I have acquired personal knowledge and information about the facts stated herein, and if called as a witness, would testify to the same.

4.   During the course of the *Centurion* investigation, two banks that facilitated the processing of payments on behalf of the defendants produced documents to the FTC detailing the volume of transactions originated on behalf of the defendants. Representatives from each of these banks – Pilot Bank of Tampa, Florida and Calnet Business Bank of Sacramento, California – have submitted sworn declarations authenticating the documents produced to the FTC. True and correct copies of these declarations are attached hereto as **Krause Att. A** (Pilot Bank) and **Krause Att. B** (Calnet Bank).

5.   Documents produced by Pilot Bank include a spreadsheet showing six different d/b/as associated with the *Centurion* investigation, the length of time that the bank processed payments for these entities, and the total dollar amount of originations and returns for each account. A true and correct copy of the spreadhseet is attached hereto as **Krause Att. C**. To calculate the net amount of funds actually withdrawn from consumers' bank accounts on behalf of the *Centurion* entities, I subtracted the total amount of returned transactions from the total amount of originated transactions. The results are as follows:

| d/b/a | Originated | Returned | Net |
|-------|-----------|----------|-----|
| Centurion | $4,799,729 | $3,770,113 | $1,029,616 |
| Integra | $805,017 | $628,974 | $176,043 |
| Spectra | $2,258,430 | $1,605,801 | $652,629 |
| Sureway | $2,543,784 | $1,661,826 | $881,958 |
| Oxford | $2,382,930 | $1,485534 | $897,396 |
| Simple Choice | $2,928,489 | $2,078,652 | $849,837 |

TOTAL: *$4,487,479*

6.  Documents produced by Calnet Bank include inlucde three spreadsheets showing all debits and returns associated with the Centurion Financial Benefits, Integra Financial Benefits, and Spectra Financial Benefits -- the three Centurion entities for whom Calnet processed payments.  My analysis of the spreadsheets shows that these three entities generated gross sales of $14,718,390 and returns of $9,311,355 for net sales of *$5,407,035*.

7.  Based on the calcuations set forth above in paragraphs 5 and 6, I conclude that the total amount of consumer injury caused by the Centurion entities to be $9,894,515 ($4,487,479 processed through Pilot Bank plus $5,407,035 processed through Calnet Bank).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 19, 2007.

Alan E. Krause

3

## DECLARATION
## PURSUANT TO 28 U.S.C. § 1746

My name is ___Robert Busch___, and I hereby declare as follows:

1.      I make this declaration on behalf of Pilot Bank, 2901 East Fowler Avenue Tampa, FL 33612. My position is ___Operations/Security___ My responsibilities include gathering and producing, or directing other Pilot Bank employees to gather and produce, business records of Pilot Bank in response to court orders, subpoenas or other process. I have personal knowledge of the facts stated in this declaration, and if called as a witness, I could and would competently testify to the facts stated herein

2.      On or about ___October 26___, 2005, I and/or Pilot Bank employees acting at my direction produced business records of Pilot Bank to the Federal Trade Commission in connection with the case *Federal Trade Commission v. Centurion Financial Benefits LLC, et al.* Civ. No. 05 C 5442, pending in the United States District Court for the Northern District of Illinois.

3.      I certify that the business records among the documents produced are true and correct copies of records: (a) made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (b) kept by Pilot Bank in the course of its regularly conducted business activity; and (c) made by Pilot Bank in the course of its regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___March 23,___, 2007.

[signature of declarant]

Page 1 of 1

KRAUSE ATT. A

## DECLARATION
## PURSUANT TO 28 U.S.C. § 1746

My name is _Juanita E. Darby_, and I hereby declare as follows:

1.     I make this declaration on behalf of Commercial Capital Bank, formerly CalNet

Business Bank, 1565 Exposition Blvd. Sacramento, CA 95815. My position is

_Client Service Manager II._ My responsibilities include gathering and

producing, or directing other bank employees to gather and produce, business records of the bank

in response to court orders, subpoenas or other process. I have personal knowledge of the facts

stated in this declaration, and if called as a witness, I could and would competently testify to the

facts stated herein.

2.     In or about October 2005, I and/or CalNet Bank employees acting at my direction

produced business records of Calnet Bank to the Federal Trade Commission in connection with

the case _Federal Trade Commission v. Centurion Financial Benefits LLC, et al._ Civ. No. 05 C

5442, pending in the United States District Court for the Northern District of Illinois.

3.     I certify that the records produced are true and correct copies of records: (a) made

at or near the time of the occurrence of the matters set forth by, or from information transmitted

by, a person with knowledge of those matters; (b) kept by CalNet Bank in the course of its

regularly conducted business activity; and (c) made by CalNet Bank in the course of its regularly

conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _March 19_, 2007.

_Juanita E. Darby_
[signature of declarant]

Page 1 of 1

| Company | Owner | 1st Processed | Last Processed | Originated $ | Returned $ | Amount Processed last 60 Days |
|---------|-------|---------------|----------------|--------------|------------|-------------------------------|
| Centurion | Sean Soma | IN 2004 | 3/31/2005 | 4799729 | 3770113 | 0 |
| Integra | Antonio Marchese | 2/2/2005 | 3/31/2005 | 805017 | 628974 | 0 |
| Spectra | Sean Soma | 1/5/2005 | 4/29/2005 | 2258430 | 1605801 | 0 |
| Sureway | Antonio Marchese | 3/1/2005 | 5/3/2005 | 2543784 | 1661826 | 0 |
| Oxford | Antonio Marchese | 5/24/2005 | 8/15/2005 | 2382930 | 1485534 | 23655 |
| Simple | Sylvain Cholette | 5/25/2005 | 9/6/2005 | 2928489 | 2078652 | 170565 |

**PB 0000002**

KRAUSE ATT. C

Amount
Processed
Last 90 Days
                    0
                    0
                    0
                    0
              423300
              465132

**PB 0000003**

KRAUSE ATT. C